[Crim. No. 5190.   Second Dist., Div. One.   Aug. 12, 1954.]

THE PEOPLE, Respondent, v. CHARLES W. OTTENSTROR, Appellant.

Lowell Lyons for Appellant.

Edmund G. Brown, Attorney General, and James D. Loebl, Deputy Attorney General, for Respondent.

WHITE, P. J.—Appellant and one Leland Little were arraigned in the Municipal Court of the Long Beach Judicial District on a complaint filed December 17, 1953, and in which complaint Counts I and II charged the crime of robbery. On the date of his arraignment appellant was represented by Deputy Public Defender Leslie Still, Jr., and entered a plea of guilty to both counts of the complaint and admitted that at the time of the commission thereof he was armed with a

deadly weapon, to wit, a revolver. Three other counts of the information were dismissed on motion of the People, and appellant herein, with his codefendant, certified to the superior court for sentence on December 21, 1953.

On the last-mentioned date appellant, represented by Deputy Public Defender J. Stanley Brill, appeared in superior court and was permitted to file an application for probation. Hearing on said application, determination of the degree of the crimes and pronouncement of judgment were continued to January 18, 1954.

On January 18, 1954, appellant's present counsel was substituted for the public defender and thereupon filed a motion for permission to withdraw the pleas of guilty and substitute therefor pleas of not guilty. In support of his motion appellant filed an affidavit, and the matter was continued to January 29, 1954.

On the last-mentioned date, appellant's motion to withdraw his pleas of guilty was heard, evidence was taken and said motion denied. The court found the crimes to be robbery of the first degree as to each count. Defendant withdrew his application for probation and made a motion for a new trial which was denied. Thereupon, the court sentenced appellant to state prison on both counts, the sentences to run concurrently.

This appeal is from the order denying appellant's motion to set aside his pleas of guilty, from the denial of his motion for a new trial, and from the judgment.

In support of his motion to withdraw his pleas of guilty appellant filed an affidavit which alleged that after his arrest on the 15th of December, 1953, in Long Beach, and his incarceration in the jail there, he was interrogated by three detectives who told him that he would be sent to the state prison. He then alleged that he became so emotionally upset that he was in a state of semishock. That the detectives told him about some robberies and advised him to plead guilty. He claimed that he was coerced by Leland E. Little, his codefendant, whom he had picked up as a hitchhiker and though he was present at the robberies his presence was coerced. He claimed that because of a malarial condition which he acquired in the Canal Zone while serving in the. United States Armed Forces he was in a very confused state in which he remembered almost nothing of the hearing · at which he pleaded guilty and that he would not have pleaded guilty but for said condition.

At the hearing of his motion for the withdrawal of his pleas of guilty, appellant was called as a witness and cross-examined. He testified that he was arrested in an automobile with Mr. Little on December 15, 1953 at about 2 a. m. Just as the officers pulled up he got out of the car at the request of defendant Little to stall the police officers who had just stopped them and to keep them from searching the car. At this time there was a loaded revolver under the seat on the passenger's side of the car. Appellant maintained that he was coerced by Little into being present at the time the robberies were committed. Nevertheless, appellant signed a statement at about 3:15 in the afternoon of December 15th in which he said that he and defendant Little voluntarily performed all these robberies.

Leslie E. Still, Jr., a deputy public defender of Long Beach, testified he had a conversation with defendant Otten-stror, on December 17, 1953, and thereafter pleaded him guilty. He went over the complaint with Ottenstror count by count, and at no time did the defendant indicate that he had been forced to commit any of the robberies or to accompany defendant Little while he committed them. Mr. Still testified that he was of the opinion that defendant Ottenstror knew exactly what he was doing at all times, when he was being interviewed, and he did not appear to be in a daze. Still testified that he made it a point to tell Ottenstror that he would do a term of five to life, on the basis of his plea of guilty. He went over this several times. Defendant Ottenstror then said that he still wanted to go through with pleading guilty on two counts.

Betty Polly Francis was the victim of a robbery on the morning of December 14th, and she identified defendant Ottenstror as one of the two men who held her up. She testified that she saw a gun in the hand of Mr. Ottenstror at that time.

Dorothea Barrett was the victim of a robbery on the afternoon of December 14, 1953. She testified that two men held her up, and while one of them, Mr. Ottenstror, stayed in the front room looking for the money, the other man took her into the back room and made her disrobe. They were gone from the front room for approximately ten minutes.

Meredith A. Reed, who was "picked up" by defendants Ottenstror and Little on the morning of December 15th, and forced to disrobe, testified that they said they had a gun,

but he did not see it. However, he saw defendant Little hand an object to Ottenstror which might have been a gun.

Creighton A. Wiggins, an inspector in the Long Beach Police Department, was one of the investigating officers in this case. He testified that he never told defendant Ottenstror that he did not need an attorney and should not get one.

William F. Greeley, another investigating officer in the case, testified that when he interrogated defendant Ottenstror he never stated that he had been forced by defendant Little to commit the robberies. He searched defendant Ottenstror's room and found among his effects a .25 caliber rifle, and some cartridges for it. Mr. Greeley also denied that he had ever advised defendant Ottenstror that he need not engage an attorney.

W. R. Ragsdale, another police officer from Long Beach, stated that Ottenstror never told him that Little had forced him to commit any of these robberies. He also did not suggest that Ottenstror need not hire an attorney.

Appellant first contends that the court erred in "not permitting the full statements in answer to the prosecutor's questions on cross-examination to stand," but he does not specifically detail any instances, nor does he support his contention by any argument. While, under such circumstances we are not called upon to consider the contention (*People* v. *Cornett*, 93 Cal.App.2d 744, 747 [209 P.2d 647]), we have examined the reporter's transcript and find therein no support for appellant's claim. On the contrary, the record reflects that following appellant's cross-examination, his counsel conducted a lengthy redirect examination devoid of any restrictions that prevented a full and complete presentation of his contentions regarding his participation in the robberies charged against him.

The trial court did not err in finding that the appellant was armed at the time the offenses charged against him were committed. Mrs. Betty Polly Francis testified that appellant had a gun in his hand at the time he held her up. Furthermore, there is abundant evidence that appellant's companion Little was armed on the occasion of the aforesaid robberies. As an aider and abettor, appellant was properly adjudged guilty of robbery in the first degree (*People* v. *Beltran*, 94 Cal.App.2d 197, 208 [210 P.2d 238]).

It is next contended that the trial court erred in refusing appellant permission to withdraw his guilty pleas and substitute therefor, pleas of not guilty. With this claim we

cannot agree. ■ It is well settled in our law that an accused who seeks to set aside a plea of guilty must show good cause therefor, and the granting or denial of such an application rests in the sound discretion of the trial judge, and his decision will not be disturbed on appeal unless an abuse of that discretion is clearly shown (*People* v. *Broady,* 120 Cal.App.2d 901, 903 [262 P.2d 669], and cases therein cited). ■ As was said in *People* v. *Cooper,* 123 Cal.App. 2d 353, 356 [266 P.2d 566] : "While a plea of guilty may be withdrawn pursuant to Penal Code section 1018 by reason of the mistake, ignorance, inadvertence or any factor that overcame the defendant's exercise of a free judgment, the basis of the motion for relief 'must be established by clear and convincing evidence.' " ■ We are persuaded that no such clear and convincing evidence was presented in the instant case. Three police officers testified that they did not advise appellant not to obtain the services of counsel, nor did they suggest to him that he plead guilty. There was also substantial testimony that appellant did not appear to be ill or in a daze at the time of his hearing. Moreover, the record reflects that in entering his plea of guilty appellant acted with knowledge of the facts and on the advice of his counsel, the public defender. No satisfactory showing is made herein to characterize the action of the trial court as an abuse of discretion.

■ Appellant's complaint that because no testimony was taken at the preliminary hearing when he pleaded guilty, there was no probable cause for holding him to answer and certifying the cause to the superior court, and that the corpus delicti was not proved, is without merit. By his pleas of guilty appellant admitted every element of the offenses charged against him (*People* v. *Cooper, supra,* p. 356; Pen. Code, § 859a).

■ Equally without merit is appellant's contention that the court erred in finding that he was not coerced into committing the crimes to which he pleaded guilty. The testimony of three police officers and the public defender who represented the accused, shows that the latter never told them that he was coerced by his companion Little into committing the crimes charged against him. And there was positive evidence by the victim in one of the crimes that during the commission of that offense, appellant himself was holding the gun. From a reading of the record we are impressed that the trial court was justified in drawing the in-

ference that the claim of coercion was originated by appellant after he had entered pleas of guilty.

Appellant's complaint that the court committed prejudicial error in permitting Deputy Public Defender Still, who represented the former, to testify to conversations had between appellant and his counsel on the ground the same were privileged is answered by the statement that any privilege which could be said to have existed was fully waived by appellant when he himself testified to the same conversations. ▉ When, as here, the client voluntarily testifies as a witness to confidential communications made by him to his attorney, he thereby waives the privileged character of such communications, and both he and his attorney may then be fully examined in relation thereto (*Stafford* v. *State Bar*, 219 Cal. 415, 421 [26 P.2d 833]; *Rose* v. *Crawford*, 37 Cal.App. 664, 667 [174 P. 69]).

▉ Appellant next complains that it was error for the court to refuse him time in which to procure an attorney of his own selection. Had he indicated his desire for an attorney of his own choice then of course he should have been afforded an opportunity to retain one, but nowhere in the record does it appear that appellant expressed a desire to employ his own attorney. In this regard, appellant testified at the hearing in the court below as follows:

"Q. You knew he (Public Defender Still) was there as your attorney to represent you after you had indicated your desire to plead guilty, didn't you? A. I understood he was my counsel. He wasn't my choice of a counsel.

"Q. You say he was not your choice of a counsel. Did you indicate by any word or statement that it was not your wish that Mr. Still represent you? A. I believe when I was asked in front of the bench there if I had an attorney I said no, and they asked me if I had any money to afford one and I said no. I don't believe anything else was mentioned.

"Q. Did you at any time object to Mr. Still representing you? A. I don't believe I recall consenting or wishing not to have him. I don't recall either one."

There is abundant evidence that from the time of his arrest, appellant's sole desire appeared to be to plead guilty while the record is barren of any evidence that he ever asked for private counsel, and during the entire proceedings he was represented by the public defender.

Alluding to the fact that appellant testified his income as an electronic engineer and inventor was "around between

eight hundred to twelve hundred or sixteen hundred a month," he urges, without citation of authority that, "There was no motive for the defendant to rob." No citation of authority is required for the statement that in a prosecution for robbery no motive need be shown.  While the absence of proof of motive is a fact to be reckoned on the side of innocence, nevertheless, if the proof of guilt is sufficient to overthrow the presumption of innocence, the accused must stand convicted, notwithstanding no motive has been shown (14 Cal. Jur.2d, Criminal Law, § 89, pp. 279, 280; *People* v. *Tom Woo*, 181 Cal. 315, 328 [184 P. 389]).

The order denying appellant's motion to withdraw his pleas of guilty and substitute therefor pleas of not guilty having been made before judgment may be reviewed on an appeal therefrom. It is not an appealable order. (*People* v. *Broady, supra,* 120 Cal.App.2d 901, 902; *People* v. *Morgan,* 9 Cal.App.2d 612, 617 [50 P.2d 1061].) The attempted appeal from that order is dismissed.

The judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Doran, J., and Drapeau, J., concurred.